**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

John Weible, Respondent,

v.

Russell Self and Brandy Brunson, Appellants.

Appellate Case No. 2022-000601

———————

Appeal From Sumter County
Thomas E. Player, Jr., Special Referee

———————

Unpublished Opinion No. 2025-UP-004
Submitted October 1, 2024 – Filed January 2, 2025

———————

**AFFIRMED**

———————

A. Paul Weissenstein, Jr., of Sumter, for Appellants.

Michael M. Jordan, of Sumter, for Respondent.

———————

**PER CURIAM:** This appeal arises from an order for judgment by default and decree of foreclosure. Appellants Russell Self and Brandy Brunson argue the special referee erred by (1) failing to require compliance with a supreme court administrative order pertaining to foreclosure proceedings, and in light of that alleged noncompliance, (2) failing to set aside orders of default and reference and (3) failing to set aside or reconsider the order for judgment by default. Additionally, Appellants assign error to the special referee's award of attorney's fees and costs to

Respondent John Weible and request this court review the case de novo to determine the amount of debt owed.  We affirm.

## FACTS

In a private agreement, Weible loaned funds to Appellants that were secured by mortgages on their residence.  Weible commenced foreclosure proceedings on October 29, 2018.  Appellants did not file an answer at this time, instead filing an Acceptance of Foreclosure Intervention form requesting they be considered for loan modification or loss mitigation pursuant to a then-existing supreme court administrative order (the 2011 order).[1]  Weible, a private lender who did not offer loan modification or loss mitigation, denied Appellants' request on February 5, 2019, and filed an affidavit of default the next day.  The court of common pleas entered default and referred the case to a special referee.

On May 16, 2019, Appellants filed a pro se answer claiming they did not receive proper notice under the 2011 order of the amount of time to respond to the denial of foreclosure intervention.  Over a month later, Appellants, through counsel, filed a motion to set aside the entry of default, arguing the time to answer had not expired because Weible failed to comply with notice requirements from the 2011 order.

At the start of the foreclosure hearing on September 19, 2019, the special referee asked both parties to submit memoranda outlining their positions regarding the 2011 order.  The parties proceeded with the hearing and presented testimony on the amount of the debt. On March 17, 2020, the special referee entered an order for judgment by default and decree of foreclosure.  The special referee found Appellants remained in default notwithstanding the 2011 order.  The special referee further found "Self did not deny that the debt was owed, but rather contested the amount [owed].  He did not offer his own calculation as to the amount of the debt due but stated it was less than what [Weible] testified and offered."  The special referee determined the debt to be $177,949.39, which included $174,449.39 for principal owed on the mortgage as well as $3,500 in attorney's fees and costs.

Appellants timely filed a Rule 59(e), SCRCP, motion for reconsideration, arguing, "Because [Weible] did not comply with the 2011 Administrative Order, no

---

[1] *See Re: Mortg. Foreclosure Actions*, 396 S.C. 209, 720 S.E.2d 908 (2011), *rescinded by Re: Rescission of Admin. Ords. Governing Mortg. Foreclosure Actions*, 442 S.C. 384, 899 S.E.2d 596 (2023).

default occurred in this matter." The special referee denied the motion via order on August 18, 2021. However, the order was entered under the wrong case number, and Appellants did not receive notice of the filing until January 2022.[2] Appellants then filed a second Rule 59(e) motion asking for clarification on the August 18, 2021, order and protecting their right to appeal. The special referee denied this motion on April 26, 2022, and this appeal followed.

## LAW AND ANALYSIS

### I. Compliance with the 2011 Order

The special referee found that Weible complied with the 2011 order because the Home Affordable Modification Program (HAMP) had expired and Weible did not participate in loan modification. In essence, the special referee found that Weible complied with the 2011 order because it did not apply to him. HAMP was issued by the United States Department of Treasury and was designed to help stabilize the housing market following the 2008 financial crisis. HAMP initially applied only to residential loans owed, securitized, or guaranteed by Fannie Mae or Freddie Mac but was later expanded to all residential loans if the lender agreed to participate in the program. Following this expansion, our supreme court effectuated the 2011 order

> to insure that eligible homeowners and lender-servicers have been afforded the benefits of loan modification or other loss mitigation *where possible*, and to insure that the procedures for handling issues relating to such efforts are handled uniformly throughout the [s]tate, so that mortgage foreclosure actions are not unnecessarily dismissed, delayed or inappropriately concluded while loan modification or other loss mitigation efforts are being pursued.

*Re: Mortg. Foreclosure Actions*, 396 S.C. at 210, 720 S.E.2d at 908 (emphasis added).

We acknowledge the language of the order leaves open the question of whether its procedural requirements apply to all mortgage lenders or only lenders of

---

[2] The error came to light during bankruptcy proceedings.

HAMP-eligible loans.[3]  However, because Weible did not offer foreclosure intervention of any kind, we hold the special referee did not prejudice Appellants' rights by concluding the issue was "resolved in compliance with [the 2011 order]."

Appellants' primary argument is that Weible violated the order by filing an affidavit of default the day after notifying Appellants of the denial of loan modification, instead of waiting thirty days.[4]  But even if Weible was required under the 2011 order to wait thirty days before filing an affidavit of default, the purpose of the order was to simplify and protect the rights of *eligible* homeowners to seek loan mitigation, and we cannot find that Weible failed to comply with an order designed to safeguard a benefit he did not offer.

Additionally, Appellants argue that Weible's failure to comply with the 2011 order's notice requirements rendered "null" the foreclosure proceedings, beginning with the affidavit of default.  We disagree.  The 2011 order itself gives the special referee the authority to determine compliance and in the event of noncompliance, to impose reasonable sanctions.  *See Re: Mortg. Foreclosure Actions*, 396 S.C. at 214, 720 S.E.2d at 910.  Here, the special referee heard arguments from both parties regarding compliance at the hearing on September 19, 2019.  After considering Appellants' memorandum on the subject, the special referee concluded that Weible had complied with the order.  Thus, to the extent that the 2011 order applied to Weible's foreclosure action, the special referee resolved the issue of compliance in accordance with the order's procedures for doing so.  And even if the special referee had found noncompliance, the remedy would not be to "nullify" the foreclosure proceedings, as Appellants request.  For this reason, we hold the special referee did not err by finding that Weible acted in compliance with the 2011 order.

---

[3] The use of "eligible" in the statement of purpose may indicate an intent to limit the order to HAMP-eligible loans.  But the order also states it shall apply to "all mortgage foreclosure proceedings concerning Owner-Occupied dwellings in this [s]tate."  *Re: Mortg. Foreclosure Actions*, 396 S.C. at 211, 720 S.E.2d at 909.

[4] When Weible commenced foreclosure proceedings, the complaint notified Appellants that the loan was not subject to HAMP.  Appellants then requested loan modification "pursuant to the [2011 order]."  Appellants either disagreed that the mortgage was not subject to HAMP or perhaps mistakenly believed the 2011 order created a substantive right to foreclosure intervention rather than procedural requirements.  Weible then filed and served on Appellants an affidavit of non-eligibility under HAMP.  Under the 2011 order, this notice should have stated that Appellants had thirty days to serve an answer or other response.

## II.    Default Judgment

Any argument that the special referee should have set aside the default must be assessed under Rule 55(c), SCRCP.[5]  "A motion under Rule 55(c) is addressed to the sound discretion of the trial court."  *Sundown Operating Co. v. Intedge Indus., Inc.*, 383 S.C. 601, 608, 681 S.E.2d 885, 888 (2009).  "For good cause shown[,] the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)[, SCRCP]."  Rule 55(c), SCRCP.  The decision on whether to set aside an entry of default or a default judgment "will not be disturbed on appeal absent a clear showing of an abuse of that discretion." *Regions Bank v. Owens*, 402 S.C. 642, 647, 741 S.E.2d 51, 54 (Ct. App. 2013).  "An abuse of discretion occurs when the judgment is controlled by some error of law or when the order, based upon factual, as distinguished from legal[,] conclusions[ ] is without evidentiary support."  *Id.*

Here, the special referee found that Appellants failed to show good cause because they conceded liability on the debt.  We agree.  Appellants' only defense to the entry of default is that it was filed in violation of the 2011 order.  Even if this were true, Appellants were not prejudiced by the entry of default because they conceded liability on the debt and only contested the amount.  To the extent that Appellants argue they were unprepared for the hearing on the amount of the debt or that the hearing should not have occurred until the compliance issue was resolved, Appellants waived this argument by agreeing to move forward with testimony.  *See TNS Mills, Inc. v. S.C. Dep't of Revenue*, 331 S.C. 611, 617, 503 S.E.2d 471, 474 (1998) ("An issue conceded in a lower court may not be argued on appeal.").  Further, the foreclosure hearing was rescheduled to September 19, 2019, from May 28, 2019, and Appellants had ample time to prepare testimony contesting the amount of debt.

The only benefit of setting aside the entry of default would have been additional time to prepare for a hearing on the amount of debt, which does not constitute good cause to set aside the entry of default.  *See Sundown Operating Co.*, 383 S.C. at 607, 681 S.E.2d at 888 ("The standard for granting relief from an entry

---

[5] Appellants effectively moved to set aside entry of default through their motion to strike filed May 23, 2019. *See Standard Fed. Sav. & Loan Ass'n v. Mungo*, 306 S.C. 22, 26, 410 S.E.2d 18, 20 (Ct. App. 1991) (stating it is the substance of the relief sought that matters "regardless of the form in which the request for relief was framed").

of default under Rule 55(c) is mere 'good cause.' This standard requires a party seeking relief from an entry of default under Rule 55(c) to provide an explanation for the default and give reasons why vacation of the default entry would serve the interests of justice." (quoting Rule 55(c), SCRCP)). For this reason, the special referee did not abuse his discretion by entering default judgment or by denying the motion to set aside the entry of default and motions to reconsider.

### III.    Attorney's Fees

Appellants argue "the unclean hands of [Weible] in failing to comply with the required residential law procedures should prevent [Weible] from recovering attorney's fees and costs." This issue is unpreserved.

"It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review." *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998). Here, the special referee awarded attorney's fees to Weible as requested in the complaint and permitted by the mortgage contract in the event of default by the mortgagor. Prior to this appeal, Appellants only raised the issue of unclean hands in their amended answer, in which they argued the claim for foreclosure should be barred "to the extent [Weible] acted with unclean hands." They made no reference to attorney's fees.

Additionally, Appellants did not raise the issue of attorney's fees at the foreclosure hearing, nor did they contest the award in their first Rule 59(e) motion. In a memorandum of law filed after the Rule 59(e) hearing, Appellants requested an award of their *own* attorney's fees—arguing the legal fees incurred by them (other than in preparation of the answer) were caused by Weible's failure to comply with the 2011 order. Appellants again requested they be awarded attorney's fees in their second Rule 59(e) motion, but this is insufficient to preserve the issue of Weible's attorney's fees for appellate review. Thus, we affirm the special referee's award of attorney's fees.

### IV.    De Novo Review of Amount of Debt

Appellants request that this court "decide the case de novo in order to determine the amount of debt" if it "determines that the grounds for appeal . . . constitute error." Because we hold the special referee did not err, we affirm the judgment finding Appellants' obligation to be $177,949.39.

## CONCLUSION

For the foregoing reasons, the special referee's order for judgment in the amount of $177,949.39 is

**AFFIRMED.**[6]

**THOMAS, KONDUROS, and GEATHERS, JJ., concur.**

---

[6] We decide this case without oral argument pursuant to Rule 215, SCACR.